IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| ROSEMARY C. RILEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:04-CV-797-T |
| | ) | (WO) |
| FAIRBANKS CAPITAL CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

This cause is before the court on Defendant's Motion for Summary Judgment (Doc. # 18) filed on April 11, 2005. For reasons to be discussed, the court finds that the motion is due to be granted.

I. FACTS AND PROCEDURAL HISTORY

The facts contained in the parties' evidentiary submissions, viewed in the light most favorable to the non-movant, show the following: The Plaintiff, Rosemary C. Riley ("Riley"), entered into a mortgage loan agreement with NationsCredit Financial Services Corporation of Alabama ("NationsCredit") in 1999. A dispute arose concerning this loan, and it was eventually settled through mediation, resulting in several modifications to the original agreement.

While the settlement negotiation was being finalized in April 2002, NationsCredit transferred a group of loans to the Defendant, Fairbanks Capital Corporation

1

("Fairbanks"). Riley's loan was one of those transferred. A letter was sent to her from Fairbanks on March 11, 2002, informing her of this transfer. NationsCredit transferred only the details of the loan that were in existence prior to the settlement negotiations being finalized, and Fairbanks was not immediately notified by NationsCredit of any modifications resulting from the settlement agreement. Because of this, Fairbanks was not aware of any changes to the terms of Riley's loan, and her first few payments – those made in June, July and August – were erroneously deemed to be late, placing her account in delinquent status. In August 2002, Fairbanks learned of the modified loan agreement, and adjusted Riley's account status to show that her May, June and July 2002 payments were timely. Fairbanks also waived the late fees that had previously been added to her account.

In December 2002, Fairbanks determined that another adjustment was necessary in order to bring Riley's account up to date. Because the settlement agreement with NationsCredit had not been finalized until June 2002, no payment was due on the account in May 2002. Beginning with her May 2002 payment, all payments were "rolled forward" by one month. At the time, after all adjustments were made, Riley's next payment was due on December 25, 2002.

On December 24, 2002, Riley requested that Fairbanks provide a payoff quote to CitiFinancial. The quote was issued on January 13, 2003. On February 6, 2003, Fairbanks sent Riley a letter explaining the current status of her account. Riley did not make her January or February 2003 payments, and Fairbanks sent her a demand letter on March 5,

2003. Riley made one payment in May 2003, which Fairbanks returned and did not credit to her account, due to Fairbanks' policy of not accepting payments that are less than the total amount necessary to reinstate delinquent accounts, unless other repayment arrangements have been made. Riley had not made any such arrangements.

That same month, Riley filed a complaint with the Alabama Attorney General's office regarding her loan with Fairbanks. Fairbanks was contacted by the Attorney General's office in June 2003 and responded on August 6, 2003. In its response, Fairbanks stated that Riley's account was seven months overdue, and that foreclosure proceedings had been put on hold due to the current dispute. Fairbanks also noted that it had requested that all credit reporting agencies to which Fairbanks reported correct any information pertaining to Riley's account for the months of June, July and August 2002 to reflect that the account was in "good standing." At the time this summary judgment motion was filed, Riley's account was still delinquent. Fairbanks had not yet foreclosed on her home.

Riley claims that Fairbanks submitted incorrect information to credit bureaus, misrepresented its right to collect certain fees, and suppressed and concealed facts concerning receipt of timely payments. She alleges that, due to these actions, she suffered an impairment of her credit status and lost opportunities to obtain refinancing and home equity loans, financial hardships that eventually led her to file bankruptcy, and suffer mental anguish, physical distress, and stress-related loss of employment.

## II. STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Under Rule 56, the party seeking summary judgment must first inform the court of the basis for the motion, and the burden then shifts to the non-moving party to demonstrate why summary judgment would not be proper. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115-17 (11th Cir. 1993) (discussing burden-shifting under Rule 56). The non-moving party must affirmatively set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials in the pleadings. Fed. R. Civ. P. 56(e).

The court's role at the summary-judgment stage is not to weigh the evidence or to determine the truth of the matter, but rather to determine only whether a genuine issue exists for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). In doing so, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In pro se litigation, there is a general rule of liberal construction of pleadings and motions. "In the summary-judgment context, we have construed pro se pleadings more liberally than those of a represented party." *Loren v. Sasser*, 309 F.3d 1296, 1301 (11th Cir. 2002). However, "a pro se litigant does not escape the essential burden under summary judgment standards of establishing that there

4

is a genuine issue as to a fact material to his case in order to avert summary judgment." *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).

### III. DISCUSSION

### A. Breach of contract

"The elements of a breach-of-contract claim under Alabama law are (1) a valid contract binding the parties; (2) the plaintiffs' performance under the contract; (3) the defendant's nonperformance; and (4) resulting damages." *Reynolds Metals Co. v. Hill*, 825 So.2d 100, 105-06 (Ala. 2002) (citing *State Farm Fire & Cas. Co. v. Slade*, 747 So.2d 293, 303 (Ala. 1999)). Fairbanks asserts that Riley has not demonstrated that she fulfilled her duty of performance under the loan agreement, and therefore she cannot prove all of the elements of her breach of contract claim. The Alabama Supreme Court has held that, before a plaintiff can establish that a defendant is liable for breach of contract, the plaintiff must first establish that she has performed her duties under the contract. *See Winkleblack v. Murphy*, 811 So.2d 521 (Ala. 2001). In this case, the contract between Riley and Fairbanks consists of the original note and mortgage agreement entered into between Riley and NationsCredit, together with the loan modification resulting from the settlement agreement between Riley and NationsCredit. The modification agreement, in Section 3, "Payments," provides that Riley will make 360 consecutive monthly payments of $722.05, due on the 25th day of each month. In the original note, Section 6, "Borrower's Failure to Pay as Required," provides that if Riley does not "pay the full amount of each monthly payment on the date it is due," she will be

5

in default. In her deposition, Riley admitted that in 2003, she was two months behind on her payments. *See* Riley Depo. 182: 4-9. Riley did not perform her duties under the contract and therefore cannot prove the elements of a breach of contract claim against Fairbanks.

Additionally, Riley has not submitted evidence to establish that Fairbanks did not fulfill its duty to perform under the contract, or the damages she suffered as a result. Riley has alleged in her response in opposition to summary judgment that Fairbanks "imposed or collected amounts that are not due and owing by contract including, without limitation, interest, prepayment penalties, and default-related fees, costs and charges." Pl.'s Brief in Opp. to Mtn. Summ. J. at ¶ 14. She cites as authority the case of *USA v. Fairbanks Capital Corp.*, for which she received a claim form pertaining to a proposed class action settlement. Riley appears to be basing her breach of contract claim on the existence of this proposed class action settlement, together with the fact that she received notice that she was a member of the class and had been charged $555.47 by Fairbanks for late fees and other default-related fees. Riley, however, opted out of the class and was not ultimately included in any settlement agreement. More importantly, the mere existence of a proposed settlement agreement is not an admission of guilt on the part of Fairbanks, nor does it serve as evidence of any wrongdoing by Fairbanks. This is clearly explained in Section 10 of the notice that Riley received:

> The Court has not ruled on the merits of the claims or defenses in this case, and Fairbanks has denied and continues to deny each and all of the claims and contentions alleged by the FTC and by Plaintiffs. Fairbanks has denied

> and continues to deny all charges of wrongdoing or liability against it arising out of or relating to any of the conduct, statements, acts or omissions alleged, or that could have been alleged.

Riley also alleges that Fairbanks "misapplied or failed to apply payments, and imposed late fees and other charges not due, all in breach of its contract with Plaintiff." Pl.'s Brief in Opp. to Mtn. Summ. J. at ¶ 15. She cites Fairbanks' August 6, 2003 letter to the Alabama Attorney General's Office, responding to Riley's complaints. In the letter, Fairbanks does admit to mistakenly misapplying Riley's payments for the first few months after it acquired her loan. However, the letter also makes clear that Fairbanks had corrected any mistakes relating to Riley's account by August 2003. Fairbanks additionally sent Riley a separate letter on that same date, explaining that a request had been made to correct her credit report in order to reflect good standing from June to August of 2002. Further, Fairbanks had sent Riley a letter earlier that year, in February 2003, informing her of corrections that had been made to her account. Riley has not provided evidence of any harm she ultimately suffered as a direct result of Fairbanks' actions after it first acquired her loan.

Riley has not established that Fairbanks failed to perform any contract provisions, nor has she provided any evidence that Fairbanks did not fulfill its duties under the contract. Fairbanks' Motion for Summary Judgment as to the breach of contract claim is therefore due to be granted.

### B. Fraudulent Misrepresentation and Suppression

"The elements of fraud are (1) a false representation (2) of a material existing fact (3) reasonably relied upon by the plaintiff (4) who suffered damage as a proximate consequence of the misrepresentation." *Saia Food Distributors and Club, Inc. v. SecurityLink from Ameritech, Inc.*, 902 So.2d 46, 56 (Ala. 2004) (citations omitted).

A fraud claim that is based on the same set of factual allegations as a breach of contract claim "must be based on representations independent from the promises in the contract and must independently satisfy the elements of fraud." *Hunt Petroleum Corp. v. State*, 901 So.2d 1, 10-11 (Ala. 2004) (Houston, J., concurring). "[I]t is a universally held principle that the 'mere failure to perform a [contractual] promise does not constitute fraud.'" *Id.* (internal citation omitted).

In the present case, Riley has not offered evidence of any false representations made to her by Fairbanks independently of those implied in their contract. In her response to the motion for summary judgement, Riley states that Fairbanks represented to her that it "is entitled to collect various loan charges that were not legally due and owing." Pl.'s Brief in Opp. to Mtn. Summ. J. at ¶ 19.   Riley's claim of fraud is without merit for two reasons.

First, Riley has not submitted any evidence to substantiate the allegation that such representations were false. As discussed above, Riley has admitted that she was, at some point, in default on her mortgage. She has not provided a contractual provision or other evidence to show that any late fees or other charges imposed by Fairbanks were contradictory to the loan agreement. She makes reference to the Fair Debt Collection

Practices Act at 15 U.S.C. § 1692f(1) and § 1692e(2), but such a claim is outside the scope of her amended complaint, which brings only state law claims against Fairbanks, and thus cannot be considered by the court.[1]

Second, Riley's factual allegations contained her claim of fraudulent misrepresentation are the same claims she makes in her breach of contract claim, in which she alleged that Fairbanks "imposed or collected amounts that are not due and owing by contract." Pl.'s Brief in Opp. to Mtn. Summ. J. at ¶ 14. Her fraud claim is not based on representations that are independent from those that made up her breach of contract claim. Therefore, Riley has not alleged facts sufficient to maintain a claim of fraudulent misrepresentation.

Riley has not met her burden of demonstrating that a genuine issue of material fact exists with regard to her claim of fraud. The defendant's motion for summary judgment as to this claim is therefore due to be granted.

## C. Negligence / Negligent Servicing

There are four elements of a negligence claim in Alabama: (1) The defendant owed a duty of care to the plaintiff; (2) the defendant breached that duty; (3) the plaintiff suffered some injury or loss; and (4) the defendant's negligence was the actual and

---

[1] Although Riley includes references to federal claims in the preamble to her Second Amended Complaint and asserts federal jurisdiction under RESPA, the FDCPA and TILA (Second Amended Complaint, ¶ 3), Riley expressly disavowed any federal claims against Fairbanks in her deposition. *See* Riley Deposition at 238-39. This court has jurisdiction over this matter pursuant to 28 U.S.C. § 1367. Riley originally brought both federal and state law claims against Fairbanks. When Riley amended her complaint to allege only state law claims, the court retained supplemental jurisdiction over these claims.

9

proximate cause of the injury or loss. *See Davis v. Wal-Mart Stores, Inc.*, 64 F. Supp. 2d 1176, 1178 (M.D. Ala. 1999). "In any negligence case, the plaintiff bears the burden of proving the existence of" those elements. *Glass v. Birmingham Southern R. Co.*, 905 So.2d 789, 794 (Ala. 2004).

    Even if Riley were able to show that Fairbanks breached a duty owed to her, she has not demonstrated that she suffered an injury or loss that was the actual or proximate cause of Fairbanks' actions. "The proximate cause of an injury is that cause which, in the natural and probable sequence of events, and without the intervention or coming in of some new or independent cause, produces the injury, and without which the injury would not have occurred. [I]f a new, independent act breaks the chain of causation, it supersedes the original act, which thus is no longer the proximate cause of the injury. [A]n [act] is superseding only if it is unforeseeable. A foreseeable intervening [act] does not break the causal relationship between the defendants' actions and the plaintiffs' injuries." *Alabama Power Co. v. Moore*, 899 So.2d 975, 979 (Ala. 2004) (internal citations omitted).

    Riley's argument is that Fairbanks' negligent reporting of her account status to the various credit reporting agencies during the summer of 2002 resulted in a subsequent denial of credit. *See* Riley Depo. at 199:7-200:10. In her deposition, Riley stated that she attempted twice to refinance her home, once through CitiFinancial, and once through Homeowners Loan Corporation. *See* Riley Depo. at 248:14-149:12. However, Riley also admitted that she had numerous other negative credit items on her credit report, including unpaid accounts, a judgment that resulted in her car being repossessed, and a judgment

resulting in her wages being garnished. *See* Riley Depo. at 247:4-248:13; 157:6-19; 261:8-11. In order to show that there is a genuine issue of material fact as to whether Fairbanks' alleged negligence caused Riley harm, she would have to demonstrate that *without* Fairbanks' incorrect reporting of her account status, she would not have been denied credit in the form of refinancing of her home. Through her own admissions, Riley had demonstrated otherwise; there are numerous other factors that, alone, could have prevented Riley from obtaining credit. She has provided no documentation from prospective lenders stating that the negative reporting from Fairbanks was the factor that caused them to deny her credit. In fact, when Fairbanks requested information from Homeowners Loan Corporation regarding Riley's credit application, Homeowners replied that they had no records indicating that she had applied for mortgage lending through them. Fax from Homeowners Loan Corp., April 8, 2005.

Riley has failed to present sufficient facts proving that any negligence attributable to Fairbanks was the actual or proximate cause of her injury. She has therefore failed to show that there is a genuine issue of material fact as to her negligence claim, and summary judgment as to this claim is due to be granted.

### D. Unjust Enrichment

"In order to substantiate a claim of unjust enrichment under Alabama law, a plaintiff may show that 'the donor of the benefit . . . acted under a mistake of fact or in misreliance on a right or duty, or (2) the recipient of the benefit . . . engaged in some unconscionable conduct, such as fraud, coercion, or abuse of a confidential relationship.'"

*Morrow v. Green Tree Servicing, L.L.C.*, 360 F.Supp.2d 1246, 1251 n.13 (M.D. Ala. 2005) (quoting *Jordan v. Mitchell*, 705 So.2d 453, 458 (Ala.Civ.App.1997)).

Riley states that as a result of its "fraudulent and improper conduct," Fairbanks "has been unjustly enriched at the expense of the unknowing Plaintiff." Second Amended Complaint, ¶ 35. In her response to the motion for summary judgment, Riley does not offer any additional facts to support her claim of unjust enrichment. She does refer to "White Collar Crimes" and a "Civil Rights Conspiracy," invoking 42 U.S.C. §§ 1985 and 1986, but these claims were not raised in her complaint and, thus, cannot be considered by the court.

Because Riley has failed to provide the court with any facts to demonstrate that Fairbanks was the recipient of an undue benefit obtained through fraud or coercion, she has not met the elements for a claim of unjust enrichment. Summary judgment as to this claim is therefore due to be granted.

## IV. CONCLUSION

While the court must construe all facts in the light most favorable to the non-moving party, the plaintiff "may not rest upon the mere allegations or denials of the [complaint], but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). In this case, Riley's response to Fairbanks' motion for summary judgment relied heavily on allegations included in her second amended complaint, and provided the court with very few facts and no substantial legal arguments to rebut the defendant's motion. Having construed all facts presented by both parties in

the light most favorable to the plaintiff, the court finds that Riley has failed to demonstrate that a genuine issue of material fact exists on any of the four claims in her seconded amended complaint.

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the Defendant's Motion for Summary Judgment (Doc. # 18) be GRANTED.

Additionally, it is ORDERED that:

The parties shall file any objections to this Recommendation within a period of thirteen (13) days from the date this Recommendation is mailed or transmitted electronically to them. A party must specifically identify the findings in the Recommendation to which objection is made; frivolous, conclusive or general objections will not be considered. Failure to file written objections to the Magistrate Judge's proposed findings and recommendations shall bar a party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

DONE, this 10th day of January, 2006.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
UNITED STATES MAGISTRATE JUDGE